IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM HOPPER,                    )
                                   )
          Petitioner,              )
                                   )
                                   )      CIVIL ACTION
     v.                            )      No. 09-3191-CM
                                   )
SAM CLINE, WARDEN, et al.,         )
                                   )
          Respondents.             )
_____)

<u>MEMORANDUM AND ORDER</u>

This petition for writ of habeas corpus, 28 U.S.C. § 2254, was filed by a Kansas prisoner.  Mr. Hopper pleaded no contest to a drug possession charge, and the judge sentenced him to the high number in the applicable guidelines range because he was on parole at the time of the offense.  Petitioner claims that his sentence was enhanced based upon this fact found by the judge rather than aggravating factors proven to a jury beyond reasonable doubt, and that this violated his Sixth and Fourteenth Amendment rights under the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  The threshold issue is whether or not Mr. Hopper properly exhausted state remedies when he failed to file a post-conviction motion after his direct appeal was dismissed for lack of jurisdiction. The court finds that petitioner failed to exhaust; but that in any event, his sentence did not violate *Apprendi* because under Kansas law the judge had discretion to impose any of three sentences within the applicable guideline range.

I.  **Factual and Procedural Background**

Petitioner's offense behavior, which is not described in the record, is not relevant to the resolution of his claims.

Procedural history details are from the State's Answer and Return, the criminal docket, and other state court records. The "Presentence Investigation Report Current Offense Information" indicates that in March 2007 the State filed a Complaint in Stevens County District Court in Case No. 07-CR-16 charging Mr. Hopper with seven offenses alleged to have been committed on or about March 5, 2007: "Manufacture or Attempt to Manufacture Methamphetamine, Possession of Precursor Chemicals, Illegal Possession of Anhydrous Ammonia, Possession of Methamphetamine, misdemeanor Possession of Drug Paraphernalia, misdemeanor Theft, and misdemeanor Criminal Damage to Property."[1] *State v. Hopper*, No. 07-99062-A (Kan. Ct. App.)(hereinafter R.) Vol. 2 at 10. Petitioner waived his right to a preliminary hearing on these charges. In April 2007, the State filed an Amended Complaint charging Mr. Hopper with a single offense committed on the same date: Possession of Methamphetamine with Intent to Sell/Distribute within 1,000 feet of a School. R. Vol. 1 at 22.

In May 2007, Mr. Hopper appeared for arraignment on the new charge; but plea negotiations had obviously taken place, and the judge directed the State to inform the court "about the plea bargaining." R. Vol. 4 (Transcript of Arraignment) at 2. The prosecutor responded that the charge in the Amended Complaint was not among the original charges; and that in exchange for a plea of no contest to the single charge, all other charges in 07-CR-16

---

[1]     The Affidavit of a police detective indicates that these charges arose when law enforcement officers spotted a truck at Mr. Hopper's residence that was believed to have been involved in the theft of backhoe batteries and located the batteries along with evidence of the drug offenses. R. Vol. 2, at 1-8.

would be dismissed and case number 06-CR-102 would be dismissed in its entirety.  The court asked defense counsel if there was anything "about this plea bargaining" other than what the State had presented, to which she responded, "No, Your Honor."  *Id.* at 4.  The court then asked Mr. Hopper if he thought there were "promises" made to him or agreements other than what the prosecutor had just stated, and he responded, "No, sir."  The judge informed Mr. Hopper that the charge was a severity level two drug felony, having a penalty of from 46 to 83 months in custody depending upon his prior criminal history, and Hopper affirmed that he understood the charge and the penalty.  *Id.* at 5.  Mr. Hopper again waived his right to a preliminary hearing and, after further questioning by the judge as to trial rights he would relinquish, entered a plea of no contest.  The court accepted his plea and dismissed all other charges.  *Id.* at 8.  At sentencing in June 2007, records were reviewed and defendant's question regarding the person-felony status of a prior burglary conviction was resolved.  The court then found, without objection, that Mr. Hopper's criminal history score was C.  R. Vol. 5 (Transcript of Sentencing) at 6.  The judge noted that Mr. Hopper was on parole from Oregon and stated:

> This Court finds that you committed this offense
> while you were on parole.  That is a special rule
> involving criminal, the sentencing procedure.  You
> have no presumption of probation.  The Court
> hereby sentences you to 72 months in the custody
> of the Department of Corrections.  The reason the
> Court chose that period of time is because you
> committed this offense while you were on parole
> and you knew you had obligations to follow . . .
> the law while you were on parole. . . .

*Id.* at 7-8.[2]  Post release supervision was set for 24 months.

Mr. Hopper unsuccessfully appealed his sentence to the Kansas Court of Appeals (KCA).  His Petition for Review was denied by the Kansas Supreme Court (KSC) in September 2008.  Petitioner did not file a state post-conviction motion.  Instead, he filed this pro se habeas corpus petition in federal court.  Respondents filed an Answer and Return together with the state court records.  Petitioner did not file a Traverse.

An evidentiary hearing is not necessary to determine petitioner's claims, as they can be resolved on the existing record.  *Anderson v. Attorney General of Kansas*, 425 F.3d 853, 858 (10th Cir. 2005).

## II.  Grounds

As Ground 1 in his federal Petition, Mr. Hopper claims that the state district court violated his rights under the Sixth and Fourteenth Amendments to the U.S. Constitution based upon the Supreme Court's holding in *Apprendi*.  As factual support, he alleges that the judge imposed "the aggravated sentence of 72 months instead of the middle box nominal sentence of 68 months without having the facts required to do so put to a jury and proven

---

[2]    The Presentence Report indicated that a "Special Rule" was applicable.  *Id.*  That rule was "Crime Committed While . . . on . . . Parole" citing K.S.A. § 21-4608 and K.S.A. § 21-4603d(f).  R. Vol. 1 at 41.  K.S.A. § 21-4603d(f)(1) pertinently provided:

> When a new felony is committed while . . . the offender is on . . . parole, . . . for a felony, a new sentence shall be imposed pursuant to the consecutive sentencing requirements of K.S.A. 21-4608, . . . and the court may sentence the offender to imprisonment for the new conviction, even when the new crime of conviction otherwise presumes a nonprison sentence.  In this event, imposition of a prison sentence for the new crime does not constitute a departure.

This rule does not appear to have impacted Mr. Hopper's sentence in this case.

beyond a reasonable doubt." As Ground 2, petitioner claims that the state district court violated *Apprendi* by sentencing him to "a higher sentence based on criminal history that was not proven to a jury beyond a reasonable doubt." In support, he alleges that his sentence was increased by 21 months based on his criminal history. The court is asked to reverse and remand for re-sentencing to 68 months, which petitioner asserts is the "center and normal sentence under *Apprendi*."

## III. Discussion: Sentence-Length Claim

### A. Sentence-Length Claim is Unexhausted.

It has long been settled that before filing a federal petition for writ of habeas corpus, a state prisoner must have exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *Duncan v. Henry*, 513 U.S. 364, 365 (1995)(*per curiam*)(*quoting Picard v. Connor*, 404 U.S. 270, 275 (1971)). As the Tenth Circuit has explained:

> To satisfy [exhaustion], an applicant "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). This includes discretionary review by the state supreme court. Id. Moreover, the presentation must conform to state rules regulating how such claims are to be presented. "Section 2254(c) requires only that state prisoners give state courts a fair opportunity to act on their claims. See Castille v. Peoples [489 U.S. 346,] at 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 [1989]." Id. at 844. In Castille the Court found that the claim was not exhausted when it was presented only in a procedural context in which it would not ordinarily be considered. Castille, 489 U.S. at 351. "Raising the claim in such a fashion does not, for the relevant purpose, constitute 'fair presentation.' See Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 (1944) (application to Nebraska Supreme Court for original writ of habeas corpus does not exhaust

> state remedies)." Id. The applicant bears the
> burden of establishing proper exhaustion. Olson
> v. McKune, 9 F.3d 95 (10th Cir. 1993).

*Bloom v. McKune*, 130 F. App'x 229, 231-32 (10th Cir.)(*unpublished*),
*cert. denied*, 546 U.S. 1066 (2005).[3] Petitioner alleged that he
exhausted both claims on direct appeal. In their Answer and Return
(Doc. 13)(A&R), respondents generally deny that petitioner has
exhausted. They acknowledge that Mr. Hopper presented his
constitutional challenge to the length of his sentence on direct
appeal; but cite K.S.A. § 21-4721(c)(1) as providing that the
Kansas appellate courts lacked jurisdiction to consider this claim
because petitioner's sentence fell within the presumptive range of
the Kansas Sentencing Guidelines Act (KSGA).[4] They also cite
Kansas case law, which plainly holds that constitutional challenges
to presumptive sentences under the KSGA cannot be reviewed on
direct appeal and must be raised in post-conviction proceedings
under K.S.A. § 60-1507. *Id.* at 7-8 (*citing State v. Lewis*, 27 Kan.
App. 2d 134, 140-42, 998 P.2d 1141 (Kan. Ct. App.)("[B]ecause the
issue is not one that could have been presented on direct appeal,
it necessarily is one whose only chance of review is by collateral
attack, i.e., a K.S.A. 60-1507 motion."), *rev. denied*, 269 Kan. 938
(Kan. 2000).[5]

---

[3]     Unpublished opinions cited herein are not binding precedent, but are
cited as persuasive authority only. *See* Fed. R. App. P. 32.1 and 10th Cir. R.
32.1.

[4]     The Kansas legislature, through provisions of the KSGA (K.S.A. §
21-4701 et seq.), "defines (a defendant's) right to appeal from his sentences"
and provides that "the appellate court shall not review: (1) Any sentence that
is within the presumptive sentence for the crime." *State v. Johnson*, 286 Kan.
824, 841, 190 P.3d 207 (Kan. 2008)(*citing K.S.A § 21-4721(c)(1)*).

[5]     The KSC has explained that in 1995 the Kansas legislature made a
deliberate choice to eliminate appeals of presumptive sentences. *State v.
Huerta*, 291 Kan. 831, 837, 247 P.3d 1043 (2011). They noted however that

The state court record establishes that Mr. Hopper briefed this claim on direct appeal.  He appealed his sentence to the KCA, was appointed different counsel, and submitted his brief that contained this claim.  R. (Brief of Appellant).  Five days later, the KCA issued a show-cause order "after reviewing the briefs," though it stayed the appellee's brief.  R. (Show-Cause Order)(Kan. Ct. App. Dec. 26, 2007).  The KCA held that "the first issue is an appeal of a presumptive sentence," and that "the statutes and case law are clear that this Court does not have jurisdiction to review the imposition of a presumptive sentence."  *Id.*  In its Show-Cause Order, the KCA explicitly stated:

> [I]n *State v. Lewis*, this Court established that a challenge to the constitutionality of a presumptive sentence must be brought in a K.S.A. 60-1507 motion as this Court lacks jurisdiction to consider the claim on direct appeal.

*Id.* (citations omitted).  Mr. Hopper was ordered to "show-cause by written response" why this claim "should not be dismissed for lack of jurisdiction . . . ."  *Id.*  The KCA "noted" appellant's response, and summarily dismissed this claim.  R. (Order) (Kan. Ct. App. January 14, 2008).

Yet, petitioner was not without a state court remedy.  He could have filed a timely 60-1507 motion.  An additional state remedy was conceivably available:

> It may be that constitutional error so infects the sentence that it qualifies as illegal under K.S.A. 22-3504; State v. Pennington, 288 Kan. 599, 601, 205 P.3d 741 (2009)).

*Id.*  K.S.A. § 22–3504(1) allows appellate review at any time to

---

"protections from sentencing judge discretion run amok" are "inherent in the KSGA's grid ranges."  *Id.*

correct an illegal sentence. *State v. Sisk*, 266 Kan. 41, 43, 966 P.2d 671 (1998). Thus, state law was clear and Mr. Hopper was plainly informed that direct appeal was not the proper process for raising this claim and that his remedy was by post-conviction motion. Nevertheless, he failed to properly exhaust this claim because he did not raise it in a state post-conviction motion and on collateral appeal to the highest state court. Respondents correctly note that, as a result, this claim could be dismissed as unexhausted.[6]

## B.  Sentence-Length Claim Has No Merit.

Respondents also correctly submit that, notwithstanding petitioner's failure to exhaust, the court may deny this claim on the merits. A&R at 8 (citing 28 U.S.C. § 2254(b)(2));[7] *Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009); *Smith v. Mullin*, 379 F.3d 919, 927 (10th Cir. 2004)("Where an issue 'may be more easily and succinctly affirmed on the merits,' judicial economy counsels in favor of such a disposition.")(*citation omitted*). The court agrees that dismissal on the merits is the better course. If

---

[6]     Notably, respondents do not argue that this claim was also procedurally defaulted in state court. In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court held that if a petitioner fails "to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," petitioner's claims are procedurally defaulted for purposes of federal habeas review. *Id.* at 735 n. 1; *see also Dulin v. Cook*, 957 F.2d 758, 759 (10th Cir. 1992)(A petitioner's failure to properly present his claims in state court for exhaustion purposes constitutes "procedural default for the purposes of federal habeas review."). However, Mr. Hopper is likely barred by the state's one-year statute of limitations from now raising this claim in a 60-1507 motion. *See Amos v. Roberts*, 189 F. App'x 830, 834 (10th Cir. 2006)(*unpublished*)("Any motion for postconviction relief is now time-barred in state court" under K.S.A. § 60-1507(f)(1) that imposes a one-year limitation period.). Thus, respondents may be unable to establish that the state court would now find this claim procedurally barred were it presented in a motion for correction of sentence available "any time" under § 22-3504(1).

[7]     § 2254(b)(2) provides that "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

this claim were dismissed only because it is unexhausted, the entire "mixed" petition would have to be dismissed without prejudice.   The interests of justice, particularly judicial economy, would not be well-served by encouraging Mr. Hopper to return to state court to pursue additional remedies and eventually to federal court on his *Apprendi* claims, which clearly have no merit.

The usual habeas standards do not apply to determine the merits of this unexhausted claim.  Those standards set forth in 28 U.S.C. § 2254(d) expressly pertain to "any claim adjudicated on the merits in state court."  Since the state appellate courts lacked jurisdiction on direct appeal and petitioner failed to pursue state post-conviction proceedings, there has been no state court adjudication on the merits.  To be entitled to federal habeas corpus relief, Mr. Hopper must show that his sentence "violated the Constitution, laws, or treaties of the United States."  28 U.S.C. § 2241.  Accordingly, the court has considered the state sentence and whether or not it violated petitioner's federal constitutional rights as he contends. *Hobbs v. McKune*, 332 F. App'x 525, 526 (10th Cir. 2009)(*unpublished*).

Petitioner's supporting facts and arguments are not developed within his Petition.  However, as noted, he has attached a copy of the Petition for Review submitted to the KSC by his appointed counsel.  (Doc. 1) Attach. 1 (PR).  The court has reviewed this appellate brief to ascertain the factual and legal basis for this claim.  Mr. Hopper recognized in his PR that under the KSGA "the sentencing range available to the state trial judge is dependent upon the severity level of the crime of conviction and

a criminal history finding," and that these "two factors are combined to determine a presumptive sentencing range, within which the judge may set a sentence." PR at 9 (citing K.S.A. § 21-4705). He was charged with an offense under K.S.A. § 65-4161(d). Counsel alleged in the PR that given the severity level of this offense and Hopper's criminal history:

> Under the Kansas Sentencing Guidelines, gridbox II-C lists the sentencing range as follows: a mitigated sentence of 65 months, a presumptive sentence of 68 months, and an aggravated sentence of 72 months.

PR at 2; *see also* R. Vol. 1 at 36 ("Kansas Sentencing Guidelines - Presentence Investigation Report Face Sheet Amended").

Petitioner asserted in his PR that the district court violated his rights under the Sixth and Fourteenth Amendments when it sentenced him to the "aggravated sentence of 72 months imprisonment" based upon facts that were not proven to a jury beyond a reasonable doubt. He cited as legal authority the U.S. Supreme Court holding in *Apprendi* "that any fact which increases the maximum penalty a defendant can receive must be included in the information, put before a jury and proven beyond a reasonable doubt." PR at 3 (citing *Apprendi*, 530 U.S. at 490). He also cited *Cunningham v. California*, 549 U.S. 270 (2007), in which the U.S. Supreme Court struck down California sentencing guidelines based on *Apprendi*. He contended that the Kansas sentencing scheme was analogous to that of California in that the sentencing court had the same three options of a mitigated, presumptive, or aggravated sentence. PR at 4 (*citing* K.S.A. § 21-4705(c)(1)). He argued that "[u]nder K.S.A. 2006 Supp. 21-4705, in order to impose the aggravated sentence, the district court must find aggravating

factors."   PR at 2-3.   When Mr. Hopper's offense was committed,
K.S.A. § 21-4705(c)(1) provided:

> The sentencing court has discretion to sentence at
> any place within the sentencing range.   The
> sentencing judge shall select the center of the
> range in the usual case and reserve the upper and
> lower limits for aggravating and mitigating
> factors insufficient to warrant a departure.

K.S.A. 2006 Supp. § 21-4705(c)(1).   Petitioner reads this statute
as requiring the sentencing judge to impose the middle term within
the grid block unless there are findings of mitigating or
aggravating circumstances.   In addition, he contends that any such
findings used to increase his sentence beyond that middle term must
be submitted to a jury and proven beyond a reasonable doubt.

Mr. Hopper's arguments fail because his interpretation of
this statutory language is incorrect, and it is only his incorrect
interpretation that runs afoul of the principles in *Apprendi*.   In
*Johnson*, 286 Kan. at 824, the KSC thoroughly considered and
reasonably construed the corresponding statute applicable to
nondrug offenses, K.S.A. § 21-4704(e)(1), which contained identical
language.[8]   They harmonized the two sentences by reading the second
sentence as "merely directory, recommending a particular course of
action without requiring that course be followed in every case."
*Id.* at 851.   They reasoned that the "caveat" in the second sentence
of "in the usual case," indicates "that a court is not required to
enter the middle term in the sentencing range, but rather that such

---

[8]     K.S.A. § 21-4704(e)(1) provided:

The sentencing court has discretion to sentence at any place within
the sentencing range. The sentencing judge shall select the center
of the range in the usual case and reserve the upper and lower
limits for aggravating and mitigating factors insufficient to
warrant a departure.

a sentence is generally recommended." *Id.* at 850. They further reasoned that to interpret the second sentence "as requiring the judge to enter the middle sentence in every case in the absence of aggravating factors, would effectively nullify the first sentence." *Id.* at 851. They also emphasized the first sentence, which explicitly states that the "sentencing court has discretion to sentence at any place within the sentencing range." Petitioner's interpretation completely ignores the first sentence of K.S.A. § 21-4705(c)(1). The KSC concluded, contrary to petitioner's contention, that this statutory language "grants a judge discretion to sentence a criminal defendant to any term within the presumptive grid block, as determined by the conviction and the defendant's criminal history" without any fact finding or statement of factors on the record. *Id.*

The fallacy of petitioner's interpretation is apparent from other relevant state law as well. For example, K.S.A. § 21-4703(q) specifically defined "presumptive sentence" as "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime severity ranking of the current crime of conviction and the offender's criminal history." *Huerta*, 291 Kan. at 833. A "departure," on the other hand, is defined under Kansas law as a sentence that is inconsistent with the presumptive sentence. K.S.A. § 21-4703(f). K.S.A. § 21-4716(a) addressed departure sentences and contrasted them with presumptive sentences:

> Except as provided in subsection (b), the sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines for crimes committed on or after July 1, 1993, unless the judge finds substantial and compelling reasons

> to impose a departure.  If the sentencing judge
> departs from the presumptive sentence, the judge
> shall state on the record at the time of
> sentencing the substantial and compelling reasons
> for the departure. (Emphasis added.)

*Id*.[9]  In *Johnson* the KSC observed the legislature's contrasting
determinations that a departure sentence may be appealed while a
presumptive sentence may not, and that the latter indicated an
intent to grant the sentencing judge unlimited discretion to impose
any term within the presumptive grid block.  *Id.*  They noted their
past cases holding that there was no requirement for a sentencing
judge to cite any specific factual circumstances when deciding to
impose the maximum term within the applicable sentencing grid
block.  *Johnson*, 286 Kan. at 850-51 (*citing see Pieplow v. State*,
31 Kan. App. 2d 998, 1000, 76 P.3d 1069 (Kan. Ct. App.), *rev.
denied* 277 Kan. 925 (2003)).  They held that under Kansas law the
prescribed 'statutory maximum' sentence, described by (*Apprendi*),
is the upper term in the presumptive sentencing grid block.  *Id.* at
851.

The federal habeas court "is bound, in the absence of any
violation or misapplication of clearly established federal law, by
a state court's interpretation of its own law."  *See Hobbs*, 332 F.
App'x at 531 (*citing Estelle v. McGuire*, 502 U.S. 62, 67-68
(1991)); *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir.
2000)(Challenges to the Kansas courts' interpretation of Kansas
laws and claims of violation of state laws are simply not

---

[9]     In *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001), the KSC
considered the effect of the *Apprendi* decision on the sentence departure statute.
They found that K.S.A. 2000 Supp. § 21-4716, which allowed for an upward
durational sentencing departure if certain aggravating factors were found by the
sentencing judge, was unconstitutional, and that the sentencing judge had gone
"beyond the maximum sentence in the applicable grid block and exposed Gould to
punishment greater than that authorized by the jury's verdict."  *Id.* at 410-11.

cognizable in a federal habeas action.).  Mr. Hopper attempts to
characterize his sentence at the top of the guidelines range as a
"departure" rather than a "presumptive sentence."  However, it was
clearly a presumptive sentence under Kansas law because it was
within the sentencing range for the severity level of his crime and
his criminal history score.

Furthermore, neither the state court's interpretation of
K.S.A. § 21-4705(c)(1) nor Hopper's sentence thereunder violates
the clearly established Supreme Court precedent of *Apprendi* and
*Cunningham*.  The Kansas appellate courts have soundly rejected
petitioner's federal constitutional arguments, and this court
agrees with and finds little cause to expand upon their very
thorough and well-reasoned opinions.  As respondents assert, the
substance of petitioner's sentence-length claim was considered and
rejected by the KSC in *Johnson*, 286 Kan. at 824.  Respondents
contend that:

> The defendant (in *Johnson*) raised the same
> challenge that Petitioner does here, arguing that
> based on the United States Supreme Court's
> decision in (*Cunningham*), sentencing a criminal
> defendant to the upper, or "aggravated," term of
> the Kansas Sentencing Guidelines grid box for his
> crime, violated the constitutional holding of
> (*Apprendi*).  The Kansas Supreme Court rejected
> this argument, distinguishing the Kansas
> sentencing procedure from the California procedure
> found unconstitutional in <u>Cunningham</u>.  <u>Johnson</u>,
> 286 Kan. at 848-851, 190 P.3d at 223-25.

A&R at 9.[10]  The KSC in *Johnson* fully considered the *Apprendi* to

---

[10]     "*Johnson* was a challenge to the statutory scheme for sentencing" in
which it was argued "that the discretion granted a sentencing judge to assign the
upper grid box term without requiring additional fact-finding by a jury violated
*Apprendi*."  *Huerta*, 291 Kan. at 840.  The KSC in *Johnson* "concluded that the
sentencing scheme did not violate *Apprendi*; and, because Johnson's individual
sentence was presumptive, (they) did nothing further, concluding that (they) had
no jurisdiction under K.S.A. 21-4721(c)(1)."  *Id.* (*citing Johnson*, 286 Kan. at
851-52).

*Cunningham* line of cases, and discussed those that "focused upon the impact of *Apprendi* when a sentencing statute authorized a range of sentences for a particular conviction" to determine whether these decisions required them to "alter their conclusion that the jury verdict authorizes the imposition of presumptive sentences." *Johnson*, 286 Kan. at 851-52.  In a detailed analysis of *Cunningham*, they noted that the Supreme Court majority had summarized "the effect of the California statutes and rules," and concluded that those provisions "direct(ed) the sentencing court to start with the middle term, and to move from that term only when the court itself" found facts and put them on the record.  *Johnson*, 286 Kan. at 847 (*citing Cunningham*, 549 U.S. at 279).   The KSC contrasted the Kansas statute, which they found did not require a sentencing judge to cite an aggravating or mitigating fact when determining which presumptive sentence to impose, with the invalidated California provisions, which expressly required judicial fact-finding. *Johnson*, 286 Kan. at 849-51.  They noted the Cunningham Court's recognition of Kansas as one of several states that, unlike California, had modified their systems in the wake of *Apprendi*. *Id.* at 848 (*citing Cunningham*, 549 U.S. at 294 n. 17).

The KCA likewise rejected the substance of petitioner's constitutional claim in *State v. Hardesty*, 42 Kan. App. 2d 431, 213 P.3d 745 (Kan. Ct. App. 2009).  Hardesty contended that the district court violated his constitutional rights by sentencing him to the aggravated sentence within the presumptive sentencing range without requiring the aggravating factors "to be charged in the complaint, put before a jury, and proved beyond a reasonable doubt."  *Id.* at 438.  Hardesty argued, as petitioner does here,

that the Kansas sentencing statutes are similar to those struck down in *Cunningham*. The KCA disagreed and ruled that "any sentence within the Kansas sentencing guidelines presumptive grid block does not violate *Cunningham* or *Apprendi*." *Id.* at 439 (*citing Johnson*, 286 Kan. 824, Syl. ¶ 5).  The KSC recently explained that in "handing down a presumptive sentence, the discretion of the sentencing judge is narrowly circumscribed," in that "K.S.A. 21-4704 requires the court to impose one of three sentences within the (KSGA's) drug or nondrug grid box, which contains a lower, middle, and upper number for the term of months." *Huerta*, 291 Kan. at 836.  They reconfirmed that "[s]election of one of those numbers does not require the court to state any particular findings on the record." *Id.* (*citing see Johnson*, 286 Kan. at 851–52).

The Tenth Circuit has similarly ruled that *Apprendi* applies only when a defendant is sentenced beyond the statutory maximum applicable to his crime of conviction, and that *Cunningham* does not affect judicial fact-finding inside the statutory range.  *See United States v. Smith*, 371 F. App'x 901, 904 n.1 (10th Cir. 2010)(*citing Apprendi*, 530 U.S. at 490; *see United States v. Conatser*, 514 F.3d 508, 527-28 (6th Cir. 2008)).  Their reasoning is persuasive:

> (Apprendi) expressly recognized that "judges in this country have long exercised discretion . . . in imposing sentence within statutory limits in the individual case." Id. at 481, 120 S. Ct. 2348. It also specifically preserved the holding announced in McMillan v. Pennsylvania, 477 U.S. 79, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986), which allows a sentencing judge to find facts triggering a mandatory minimum and to do so by only a preponderance of the evidence. Apprendi, 530 U.S. at 487 n. 13, 120 S. Ct. 2348. It made clear that the rule it prescribed does not constrain sentencing decisions made under the sentencing

> guidelines, that is, because fact-finding pursuant
> to the guidelines sets a sentence within the
> statutory range-not outside it- <u>Apprendi</u> does not
> apply. See id. at 494 n. 19 & 497 n. 21, 120 S.
> Ct. 2348. Apprendi's principles are not
> implicated unless a judge-decided fact actually
> increases the defendant's sentence beyond the
> maximum penalty for the offense of conviction.
> <u>United States v. Wilson</u>, 244 F.3d 1208, 1215-16
> (10th Cir.), <u>cert. denied</u>, 533 U.S. 962, 121 S.
> Ct. 2619, 150 L. Ed. 2d 773 and --- U.S. ----, 122
> S. Ct. 186, 151 L. Ed. 2d 130 (2001).

*U.S. v. Ramirez*, 43 F. App'x 358, 360 (10th Cir. 2002).

This court has independently reviewed the relevant, established Supreme Court precedent, including *Apprendi* and *Cunningham,* and finds no violation of federal constitutional law in the state court's conclusions that the KSGA gives judges discretion to sentence within a statutory sentencing range and thus presents no Sixth Amendment violation. It is undisputed that Mr. Hopper's sentence was set within the statutory guideline range. Under Kansas law, a sentence within this range is presumptive and does not exceed the statutory maximum punishment for his crime. Given these facts, *Apprendi* simply does not apply. *See id.; State v. Dean*, 273 Kan. 929, 46 P.3d 1130, 1135 (Kan. 2002).

## IV. Discussion: Criminal History Claim

Mr. Hopper's second claim is similar in that he contends *Apprendi* was violated when the sentencing judge considered his prior convictions in calculating his criminal history score without submitting those convictions to a jury to be proven beyond a reasonable doubt.

### A. The State Court Adjudication

Petitioner's second claim, unlike his first, was exhausted and adjudicated on the merits by the Kansas appellate courts. The

KCA held that this issue was a challenge to "the use of prior convictions in (petitioner's) criminal history score" and appeared to be controlled by KSC precedent, namely *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002).  Mr. Hopper was ordered to show cause why his direct appeal should not be summarily affirmed.  After considering his response, the KCA affirmed based on *Ivory*.[11]  It necessarily follows that this claim is reviewed under the usual habeas standards.

### B.  Standard of Review

Under 28 U.S.C. § 2254(d), a federal court may not grant habeas relief on any claim adjudicated in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

A state court's decision is "contrary to" established federal law if the state court reaches a different result than the Supreme Court would when presented with facts that are ". . . materially indistinguishable from a relevant Supreme Court precedent" or if the state court "applies a rule that contradicts the governing law" set forth in Supreme Court cases.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  A decision is an "unreasonable application" of

---

[11]     The KSC clearly decided this issue adversely to Mr. Hopper's position in *Ivory*, 273 Kan. at 45-46.  In *Ivory*, they held that the fact of a prior conviction was an exception to the rule of *Apprendi* so that a "prior conviction need not be presented in the indictment and proven to a jury in order to be used by [a] court to increase the sentence imposed." *Id.* at 46.

clearly established federal law if a "state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

### C.   The Criminal History Claim Has No Merit.

Mr. Hopper does not dispute that his crime of conviction was a drug severity level 2 felony.  Nor does he dispute that his criminal history score was C because he had one person felony and one nonperson felony.  As noted, at sentencing the presentence investigation report was discussed, and Mr. Hopper initially sought to challenge one of his two prior convictions, but eventually agreed that his criminal history score was C.  R. Vol. 5 at 6. Petitioner alleges nothing more than had the district court disregarded his prior convictions, he would have had a criminal history of "I" (no prior convictions) and his sentencing range would have been 46-49-51.  It is therefore plain that petitioner's claim, that the state sentencing court improperly relied upon his criminal history in determining his sentence, is not based upon any allegation that the court unreasonably determined the facts regarding his prior convictions.  Instead, it is based upon his belief that the rule of *Apprendi* prohibited the sentencing court, as a matter of law, from relying upon any prior conviction, factually accurate or not, that had not been first proved to a jury beyond a reasonable doubt.  Accordingly, petitioner's claim is analyzed under subsection (1) rather than subsection (2) of § 2254(d).

Clearly established U.S. Supreme Court precedent exists that is relevant to petitioner's claim.  In *Almendarez-Torres v.*

*United States*, 523 U.S. 224 (1998), the Supreme Court held that prior convictions were sentencing factors that could be considered by a judge to increase a sentence and not elements of the offense that must be proved to the jury. *Id.* at 241-42. The Court in *Apprendi* specifically discussed *Almendarez-Torres* and expressly excluded prior convictions from its rule in its holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490; *Blakely v. Washington*, 542 U.S. 296, 301 (2004). They reasoned that prior convictions "entered pursuant to proceedings with substantial procedural safeguards of their own" are not "contested issues of fact," and that recidivism has traditionally been the basis for a sentencing court to increase an offender's sentence. *Apprendi*, 530 U.S. at 488-89.[12]

In his PR Mr. Hopper acknowledged that "the *Apprendi* decision "left intact the Court's prior ruling" in *Almendarez-Torres* that "prior convictions need not be submitted to the jury for determination beyond a reasonable doubt." PR at 10 (citing *Apprendi*, 500 U.S. at 490)(*citing Almendarez-Torres*, 523 U.S. at 224). Nonetheless, he makes the frequently-heard arguments that

---

[12]   As the Supreme Court explained:

Both the certainty that procedural safeguards attached to any "fact" of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that "fact" in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a "fact" increasing punishment beyond the maximum of the statutory range.

*Apprendi*, 530 U.S. at 489. Mr. Hopper's prior convictions were presumably pursuant to prior criminal proceedings, and he does not allege that those proceedings were without due process. Nor does he challenge the accuracy of the fact of either prior conviction.

the *Apprendi* majority observed that *Almendarez-Torres* was "arguably incorrectly decided," and that the Court has "foreshadowned the potential application of the *Apprendi* rule to prior convictions" in *Apprendi* as well as its subsequent cases including *Shepard v. U.S.,* 544 U.S. 13 (2005).

The Tenth Circuit denied substantially the same claim as petitioner's in *Hooks v. Roberts*, 377 F. App'x 735 (10th Cir. 2010)(*unpublished*). There, Hooks claimed that the state trial court violated *Apprendi* by enhancing his sentences on the basis of his criminal history because that history was neither admitted by him nor found by a jury beyond a reasonable doubt. The Tenth Circuit rejected his claim along with his argument that the Supreme Court's decision in *Almendarez-Torres* was wrongly decided.

The decision in *Almendarez-Torres* is directly contrary to petitioner's claim concerning his prior convictions. As Mr. Hopper essentially concedes, the Supreme Court, despite its dicta, has neither directly overturned *Almendarez-Torres*, nor ruled in a subsequent case that prior convictions are subject to the rule in *Apprendi*. The Kansas courts and the Tenth Circuit have repeatedly noted that "[a]lthough the [Supreme] Court may overrule *Almendarez-Torres* at some point in the future, it has not done so." *See State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869 (Kan. Ct. App.), *rev. denied* 284 Kan. 949 (2007). Thus, the courts "are bound by existing precedent to hold that the *Almendarez-Torres* exception to the rule announced in *Apprendi* . . . remains good law." *United States v. Moore*, 401 F.3d 1220, 1224 (10th Cir. 2005). Accordingly, this court finds that the Kansas courts' adjudication of petitioner's claim did not result in a "decision

that was contrary to . . . clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).  Nor did the state courts engage in an objectively unreasonable application of the principles in *Apprendi* or its progeny.  *See Anderson v. Mullin*, 327 F.3d 1148, 1158 (10th Cir. 2003), *cert. denied*, 540 U.S. 916 (2003).  Indeed the state court adjudication was legally consistent with *Apprendi* and *Almendarez-Torres*.  Consequently, Mr. Hopper is not entitled to federal habeas corpus relief on this claim.

For all the reasons set out above, petitioner is not entitled to federal habeas relief.

**IT IS THEREFORE ORDERED** that the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (Doc. 1) is denied.

**IT IS SO ORDERED.**

Dated this 20th day of December, 2011, at Kansas City, Kansas.


s/ Carlos Murguia
CARLOS MURGUIA
United States District Judge